CHANDLER, J.,
for the court.
¶ 1. Jessie Gainwell was convicted in a jury trial in the Copiah County Circuit Court for domestic violence aggravated assault. The trial court sentenced him to twenty years’ imprisonment, with ten years to serve, ten years suspended, and five years’ post-release supervision. The court also ordered that Gainwell be enrolled in an alcohol and drug program. Gainwell raises the following issue on appeal:
I. WHETHER THE JURY’S VERDICT WAS CONTRARY TO THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
Finding no error, we affirm.
FACTS
¶ 2. Jessie Gainwell and Gertrude Warmsley had an “on again, off again” relationship for at least ten years. Although never married, they were the parents of an eight-year-old son. Since September 2000, Jessie had resided in Gertrude’s home in Crystal Springs, Mississippi, along with their son and Gertrude’s nineteen-year-old daughter, Shaun Warmsley. Both Jessie and Gertrude worked at LCI, Signature Works.
*108 ¶ 3. On May 5, 2001, a fight began with a box cutter between Gertrude and Jessie in her bedroom. The testimonies of Gertrude and Jessie differ as to which was the initial aggressor. Both claim they were acting in self-defense.
¶ 4.. Gertrude testified that she was asleep when Jessie walked into the bedroom and began accusing her of sleeping with another man. She said that he then pulled out his box cutter and began to stab at her. She stated that he was on top of her when her son and daughter ran into the room yelling for Jessie to get off of her.
¶ 5. Jessie testified that he never accused her of being with another man. He stated that they were both sitting on the edge of the bed discussing Shaun’s spreading of rumors about him physically abusing Gertrude. He stated that he reached for his cigarettes which happened to be in the same pocket as his box cutter when the weapon fell on to the floor. He stated that Gertrude immediately went for the weapon and began stabbing at him. Jessie stated that he had the box cutter in his pocket because he used it at work.
¶ 6. Shaun testified that she heard her mother screaming, “Oh, he’s fixing to cut me.” She then ran into the bedroom and found Jessie on top of Gertrude. She testified that she never saw the box cutter. She also stated that she had seen Jessie drinking earlier in the night.
¶ 7. Paramedics and the Copiah County police responded to a call at the home of Gertrude concerning a woman being stabbed. When the paramedics arrived they only found Gertrude. They carried her to the hospital where she received sixteen sutures. Her wounds consisted of cuts on her left and right thumb, her right ear, and the right side of her scalp.
¶ 8. Jessie stated that after the fight he went to a friend’s house to see if he would take him to the hospital. When his friend was not home, he came back to Gertrude’s house.
¶ 9. Approximately two hours later, the police received another call from someone in Gertrude’s home stating that the man who had stabbed Gertrude was back in the house. The police found Jessie lying in the bedroom with a rag wiping the blood from his hand. He was then arrested and escorted by police to the hospital for treatment. He received three sutures to his right hand between his thumb and index finger. The treating physician, Dr. Joy Jackson, indicated that she smelled alcohol on his breath.
¶ 10. A trial was held in Copiah County Circuit Court on January 30, 2002. The State called the victim, Gertrude Warms-ley, as well as two police officers, the dispatcher, the treating physician, and Shaun, the eyewitness. For the defense, Jessie testified. At the conclusion of the trial, the jury convicted Jessie of domestic violence aggravated assault.
LAW AND ANALYSIS
I. WAS THE JURY’S VERDICT CONTRARY TO THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE?
¶ 11. This Court in reviewing a trial court’s denial of a motion for a directed verdict or a JNOV must view and test the sufficiency of the evidence as a matter of law “in a light most favorable to the State.” Lewis v. State, 832 So.2d 1266, 1267(¶ 3) (Miss.Ct.App.2002). The lower court’s ruling will only be reversed where “no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty.” May v. State, 460 So.2d 778, 781 (Miss.1984).
*109 ¶ 12. Similarly, the weight of the evidence is reviewed upon the trial court’s denial of a defendant’s motion for a new trial. Brown v. State, 825 So.2d 70, 76(¶ 17) (Miss.Ct.App.2002). Gainwell asserts that had the jury based its verdict on the evidence, the only conclusion it could have reached was not guilty by reason of self-defense. However, Gainwell failed to offer a motion for a new trial. This is a matter the trial judge must decide first, before any appeal is taken, and since Gain-well failed to raise this issue in a motion for a new trial, he is barred from raising this issue here. Blankenship v. State, 792 So.2d 1009, 1012(¶ 7) (Miss.Ct.App.2001).
¶ 18. Based on the record before us, this Court finds that the trial judge did not abuse his discretion in denying Gainwell’s motion for a JNOV. Gainwell asserts that the injury to his right hand indicates that it was a self-defense wound. However, Dr. Jackson testified that both Jessie and Gertrude obtained cuts to the hands indicating defensive wounds. Also, she testified that it was not impossible to cause injury to your own hand if holding the weapon.
¶ 14. This Court holds that the State put forth sufficient evidence to create a factual question that reasonable and fair minded jurors could have formed differing conclusions about whether Gainwell was acting in self-defense. Therefore, this issue is without merit.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF COPIAH COUNTY OF CONVICTION OF DOMESTIC VIOLENCE AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH TEN YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COPIAH COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ„ CONCUR.